# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

DONNA PUSEY,                          *

v.                                   *     CIVIL No. SKG-09-3410

MICHAEL ASTRUE,                      *
Commissioner
Social Security Administration       *

## MEMORANDUM OPINION

Plaintiff, Donna Pusey, by her attorney, Tracey N. Pate Esq., filed this action seeking judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA"), pursuant to 42 U.S.C. § 405(g), who denied Ms. Pusey's claim for Social Security Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Title II of the Social Security Act ("the Act"), as amended, 42 U.S.C. §§ 401–434.

This case has been referred to the undersigned magistrate judge by consent of the parties pursuant to 28 U.S.C. § 636(c) and Local Rule 301. (ECF No. 11). Currently pending before the Court are cross motions for summary judgment. (ECF Nos. 15 and 25). No hearing is necessary in this case. Local Rule 105.6. For the reasons discussed below, this Court DENIES Ms. Pusey's motion for summary judgment and DENIES the government's motion,

but REMANDS the case to the Commissioner for proceedings consistent with this opinion.

## I. Procedural History

Plaintiff, Donna Pusey, filed for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") on February 1, 2007. (R. 116-125). Her application was denied at both the initial and at the reconsideration levels. (R. 83-87, 89-92). A hearing was held on March 6, 2009 before Administrative Law Judge ("ALJ") Judith A. Showalter. (R. 35). On March 26, 2009, ALJ Showalter denied Ms. Pusey's claim for benefits on the grounds that she had the capacity to successfully adjust to other work that existed in significant numbers in the national economy. (R. 28-29). The Appeals Council subsequently denied Ms. Pusey's application for review, making the ALJ's decision the final decision of the SSA. (R. 1-4). Ms. Pusey has exhausted her administrative remedies and seeks review of the SSA decision by this Court. (ECF No. 15).

## II. Factual Background

The Court has reviewed the government's Statement of Facts and adopts it subject to the following supplementation and correction. The government claims that Ms. Pusey reads, watches television, does household chores including sweeping, vacuuming, laundry, and preparing meals. (ECF No. 25-1, 3). While this statement is not false, the Court notes that Ms. Pusey qualified

that she is able to do these chores only on a limited basis and with the help of others. (R. 64). She also shops, attends church and crochets, but as the record indicates, these activities are also limited. (R. 65). Ms. Pusey described the recency and frequency of her activities by explaining that "it has been a while" or "I used to go to church, but I don't go quite as much now as I used to." Id.

At the hearing, Ms. Pusey complained of pain that starts at her cheeks and radiates down to her legs. (R. 67). To alleviate her pain she testified that she took Flexeril, MS Contin and Oxycodone. (R. 50). On a scale from one to ten, Ms. Pusey rates her pain while taking her medications as a seven; while without medication she rates her pain as a ten. (R. 51). She also testified that her sleep is continuously interrupted by her pain. (R. 55).

The ALJ's hypothetical to the vocational expert described a person with a "medium level of exertion, posturals are all occasional, but not climbing of a ladder, rope of a scaffold." (R. 73). The person should avoid exposure to hazards, odors, fumes and poor ventilation. Id. The person would require simple, unskilled work that is low stress. (R. 73-74). The vocational expert replied that there were several positions in the national and regional economy that the hypothetical person would be qualified for. (R. 74-75).

Ms. Pusey's counsel subsequently posed two hypothetical situations to the vocational expert. The first hypothetical described a person who had no capabilities to deal with the public, handle work stress, understand, or remember. (R. 76). The person would also have a fair ability to follow work rules, relate to coworkers, maintain concentration, and remember and carry out detailed but not complex instructions. Id. The vocational expert responded that there would be no positions available for such a person in the national or local economy. Id.

Counsel's second hypothetical described a person that could only lift less than ten pounds, could stand and walk only fifteen minutes at a time and no more than one hour per workday, with limited use of their upper and lower extremities. (R. 76-77). Again, the vocational expert responded that there were no positions available for a person with this combination of limitations. (R. 77).

The Court also notes that Ms. Pusey had a cervical diskogram in 2008, which revealed a major junctional diskogenic pain mechanism at the C4-5 intervertebral level. (R. 254). She received epidural steroids for her spinal disorders (R. 354) and has reported improved pain management from the epidurals. (R. 339).

The Court adopts Ms. Pusey's recitation of facts regarding Dr. Reilly's 2009 assessments. (ECF No. 15-1, 7-10.)

### III. ALJ Findings

In evaluating Ms. Pusey's claim for disability under the Act, the ALJ must consider the entire record and follow the sequential five step evaluation process set forth in 20 C.F.R. § 404.1520(a). Upon completion of the five step evaluation process in this case, the ALJ concluded that Ms. Pusey was not disabled under the Act because Ms. Pusey could adjust to other jobs available in significant numbers in the national economy. (R. 28-29).

At step one, the claimant must prove that she is not engaged in any "substantial gainful activity."[1] 20 C.F.R. § 404.1520(a)(4)(i). If the ALJ finds that the claimant has engaged in "substantial gainful activity," then the claimant will not be considered disabled. Based upon Ms. Pusey's earnings record, the ALJ determined that Ms. Pusey had not engaged in any substantial gainful activity since her alleged onset date of September 2, 2005. (R. 13).

---

[1] Substantial gainful activity is defined as "work activity that is both substantial and gainful." 20 C.F.R. § 416.972. Work activity is substantial if it involves doing significant physical or mental activities and even if it is part time or if plaintiff is doing less, being paid less, or has fewer responsibilities than when he worked before. 20 C.F.R. § 416.972(a). Substantial gainful activity does not include activities such as household tasks, taking care of oneself, social programs, or therapy. 20 C.F.R. § 416.972(c).

At the second step, the ALJ must determine whether the claimant has a severe, medically determinable impairment or a combination of impairments that limit her ability to perform basic work activities. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii), 404.1520(c), 416.920(c); see also 20 C.F.R. §§ 404.1521, 416.921. There is also a durational requirement that plaintiff's impairment last or be expected to last for at least 12 months. 20 C.F.R. § 416.909. Here, the ALJ found Ms. Pusey's cervical degenerative disc disease, cervical radiculopathy, depression, anxiety, post traumatic stress disorder, and asthma were severe impairments. (R. 14). However, the ALJ determined that Ms. Pusey's other impairments, including seizure disorder, attention deficit disorder, hearing impairment, and lumbar spondylosis, did not qualify as severe under the Social Security Act. (R. 17-20).

At step three, the ALJ considers whether the claimant's impairments, either individually or in combination, meet or equal an impairment enumerated in the "Listing of Impairments" in 20 C.F.R. § 404, Subpart P, Appendix 1 ("Listing" or "LOI"). 20 C.F.R. § 416.920(a)(4)(iii). Here, the ALJ specifically considered sections 1.00, 3.00, 11.00, 12.04, and 12.06 of the LOI. (R. 20-21). The ALJ found that Ms. Pusey's impairments did not equal in severity any pertinent section of the listings, whether considered singly or in combination. (R. 20). The ALJ

determined that Ms. Pusey's daily activities were only mildly restricted as she was able to cook, clean and take care of her groceries (R. 20); she had only mild difficulties in her social functioning as she went to shopping centers, visited family, occasionally attended church (R. 20-21); she had only moderate difficulties in her concentration, persistence and pace as her memory was intact and she could follow simple instructions (R. 21); and she had no episodes of decompensation for an extended duration, nor any decompensation due to increased mental demands or changes in environment. (R. 21).

Before an ALJ advances to the fourth step, she must assess the claimant's "residual functional capacity" ("RFC"), which is then used at the fourth and fifth steps. 20 C.F.R. § 404.1520(e). "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p. The ALJ must consider even those impairments that are not "severe." 20 C.F.R. § 404.1545(a)-(e). The ALJ determined that Ms. Pusey's impairments were not disabling; her report of pain was inconsistent with the medical record as a whole; and that she had only mild to moderate symptoms of mental impairment. (R. 23-24). As such, the ALJ determined that Ms. Pusey had the RFC to perform simple, unskilled, low stress, light work as defined in 20 C.F.R. § 404.1567(b) and 20 C.F.R. § 416.967(b),

albeit with limitations on climbing, balancing and exposure to harmful environments. (R. 21-22).

At the fourth step, the ALJ must consider whether the claimant retains the RFC necessary to perform past relevant work.[2]  20 C.F.R. §§ 404.1520(e), 416.920(e).  Ms. Pusey's past relevant work included being a driver and a home health aide. (R. 28).  A vocational expert testified that Ms. Pusey's past relevant work exceeded her RFC.  (R. 28).  Therefore, the ALJ found that Ms. Pusey could not perform her past relevant work. (R. 28).

If the claimant is unable to resume her past relevant work, the ALJ proceeds to the fifth and final step.  This step requires consideration of whether, in light of vocational factors such as age, education, work experience, and RFC, the claimant is capable of other work in the national economy.  See 20 C.F.R. §§ 404.1520(g), 416.920(g).  At this step, the burden of proof shifts to the agency to establish that plaintiff retains the RFC to engage in an alternative job which exists in the national economy.  Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995); McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980). The agency must prove both the claimant's capacity to perform

---

[2] The regulations state that "impairment(s) and any related symptoms, such as pain, may cause physical and mental limitations that affect what [one] can do in a work setting . . . residual functional capacity is the most [one] can still do despite [those] limitations."  20 C.F.R. § 404.1545.

the job and that the job is available.  Grant v. Schweiker, 699
F.2d 189, 191 (4th Cir. 1983).  Before the agency may conclude
that the claimant can perform alternative skilled or semi-
skilled work, it must show that the claimant possesses skills
that are transferable to those alternative positions or that no
such transferable skills are necessary.  McLain, 715 F.2d at
869.  Here, the ALJ determined that, based upon the testimony of
a vocational expert, there were jobs available in significant
numbers in the national economy that Ms. Pusey could perform
(e.g., order caller, mailroom clerk, and price baker).  (R. 28-
29).  Thus, the ALJ concluded that Ms. Pusey was not disabled.

### IV.  Standard of Review

The primary function of this Court in reviewing Social
Security disability determinations is not to try the claimant's
claims de novo, but rather to leave the findings of fact to the
SSA and to determine upon the record as a whole whether the
SSA's decision is supported by substantial evidence and whether
the correct legal standard was applied.  42 U.S.C. §§ 405(g),
1383(c)(3); Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996);
Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).
Substantial evidence exists when the record contains "more than
a mere scintilla of evidence but somewhat less than a
preponderance."  Craig, 76 F.3d at 589 (citing Laws v.
Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).  It is "such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). In other words, "[i]f there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'" Hunter, 993 F.2d at 34 (quoting Celebrezze, 368 F.2d at 642).

In its review for substantial evidence, this Court does not determine the weight of the evidence or substitute its own judgment for that of the Commissioner. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). However, "[a] factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Therefore, the deferential standard of review applied to the SSA's findings of fact does not apply to its conclusions of law or its application of legal standards and procedural rules. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982). After review, this Court is empowered by 42 U.S.C. § 405(g) to affirm, modify, or reverse the decision of the Commissioner with or without remanding the case for rehearing. Melkonyan v. Sullivan, 501 U.S. 89, 98 (1991).

## V. Discussion

Ms. Pusey argues that the ALJ made two critical errors in arriving at her decision.  First, Ms. Pusey argues that the ALJ gave insufficient weight to her treating physician's opinion and that, if his opinion would have been given proper weight, the ALJ would have been found Ms. Pusey to be disabled.  Secondly, Ms. Pusey argues that the ALJ wrongfully rejected her pain impairment.  Because the ALJ did not properly articulate why she gave the treating physician's opinion little weight or why she denied Ms. Pusey's pain impairment, the Court remands this case asking the ALJ to articulate, using the facts from the record, the reasons for her decision.

## A.   ALJ's Consideration of Treating Physician Medical Opinions

Ms. Pusey argues that the ALJ gave insufficient weight to the medical opinions of her treating physician, Dr. Robert Reilly.  In the Social Security disability context, the medical opinion of a treating physician is typically assigned greater weight than opinions of non-treating physicians due to the nature of the relationship between patient and doctor.  20 C.F.R. § 404.1527(d).  A treating physician's opinion may be given controlling weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [consistent] with the other substantial evidence in [the] case record."  Mastro v. Apfel, 270 F. 3d 171, 178 (4th Cir. 2001); See 20 C.F.R. § 404.1527(d)(2).  A treating physician's opinion

may be disregarded entirely, but only where there is persuasive contradictory evidence. Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

When an examining physician's opinion is not given controlling weight, the ALJ must evaluate and weigh all of the medical opinions "pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527(d)(2)).

Social Security Ruling 96-2p requires that "the adjudicator will always give good reasons in the notice of the determination or decision for the weight given to a treating source's medical opinion." SSR 96-2p. "When the determination or decision: is not fully favorable, e.g., is a denial . . . the notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Id.

As the record reflects, Dr. Reilly is Ms. Pusey's treating physician. From 2001 onward, Dr. Reilly has treated Ms. Pusey regularly for both mental and physical conditions, prescribed various medications, and referred her to other doctors for specialized treatment. (R. 257-310). Dr. Reilly was aware of tests and evaluations conducted by other doctors, many of which were forwarded to him. (R. 359-453). Dr. Reilly diagnosed Ms. Pusey with, *inter alia*, cervical degenerative disc disease (R. 307), cervical radiculopathy (R. 307), seizure disorder (R. 293), bi-polar disorder (R. 310), asthma (R. 288), and post traumatic stress disorder (R. 305).

In 2003, 2007 and 2009, Dr. Reilly completed medical assessments of Ms. Pusey in conjunction with her applications for social services. In those assessments, Dr. Reilly determined that Ms. Pusey had very limited capabilities to sit, stand or walk, and that she should not carry more than ten pounds. (R. 304, 392-395). He also determined that she has major environmental restrictions. (R. 392-395, 415). He opined that she had limited mental capabilities and would have no capability to deal with the public or handle work stress. (R. 305, 389-391, 416).

The ALJ indicated that she gave little weight to Dr Reilly's opinion; however, her explanation for doing so was not completely satisfactory. The ALJ stated that she gave little

13

weight to Dr. Reilly's opinion because: "a determination made in conjunction with another governmental agency ... [is] not binding on the Social Security Administration"; "Dr. Reilly's conclusions [are] inconsistent with the record and his own treatment notes"; "Dr. Reilly's lack of expertise in vocational training and occupational health coupled with his specialty in general medicine have not provided a balanced review of the claimant's limitations"; Dr. Reilly does not have a specialization in psychology, psychiatry, neurology or orthopedics and he relied heavily on Ms. Pusey's subjective complaints regarding her impairments; and opinions regarding ability to work are reserved for the Commissioner. (R. 27-28).

The ALJ's reasoning that Dr. Reilly's opinion should be given little weight because it was given in conjunction with a state agency is incorrect. Even if Dr. Reilly's opinion is not binding because it was made in conjunction with a state agency, it does not follow that the ALJ should therefore afford Dr. Reilly's opinion less weight. In determining the weight given to a treating physician's opinion, the ALJ must follow the guidelines of 20 C.F.R. § 404.1527(d)(2). Under the guidelines, the fact that a treating physician's opinion was given in conjunction with a state agency is not a factor.

The ALJ's statement that "Dr. Reilly's conclusions [are] inconsistent with the record and his own treatment notes" (R.

14

27) is conclusory, without supporting facts.  An ALJ's
determination must "contain specific reasons for the weight
given to the treating source's medical opinion, supported by the
evidence in the case record, and must be sufficiently specific
to make clear to any subsequent reviewers the weight the
adjudicator gave to the treating source's medical opinion and
the reasons for that weight."  SSR 96-2p.  The ALJ's
determination that Dr. Reilly's opinion was inconsistent without
describing what was inconsistent is not sufficiently clear to a
reviewer.

The Commissioner through his attorney, has attempted to
provide the factual basis to support the ALJ's bare conclusions.
For example, the Commissioner plumbs the record to support the
statement that the treating physician's treatment notes do not
demonstrate disability.  (ECF No. 25, 16).  Similarly, the
Commissioner analyzes and cites to specific treatment notes of
other physicians and health care providers to support the ALJ's
view disfavoring Dr. Reilly's opinion and supporting her
disability conclusion.  (ECF No. 25, 17-18).  However, it is not
the role of the Assistant United States Attorney or the Court to
"fill in the blanks."

In some ways, the ALJ's discussion of the medical evidence
is quite impressive.  For example, she lists key evidence
supporting her conclusions that three of claimant's impairments

are not severe.  (R. 17-20).  However, as to the crucial question of the weight to be given Dr. Reilly, the treater, the factual underpinnings are wanting, as is a specific discussion of the 20 C.F.R. § 404.1527 factors.

The nature, extent and frequency of the treatment relationship especially demands a more satisfying and satisfactory explanation with specific factual references.  The ALJ does not discuss the treatment relationship.  Since November 2001, Dr. Reilly has treated Ms. Pusey more than thirty times, with the last recorded visit occurring in March 2009.  (R. 257-310, 389-453).  Dr. Reilly has treated Ms. Pusey for her cervical disk disease, cervical radiculopathy, balance issues, bronchitis, asthma, cysts, anxiety, depression, seizure disorder, bi-polar disorder, and post traumatic stress disorder. (R. 261- 301, 396-413).  He has prescribed a list of medications including effexor, strattera, zyprexa, alprazolam, flexeril, phenytoin, hydrocodone, claritin, advair, and combivent.  (R. 316).  He has referred Ms. Pusey to other physicians including Dr. Zant, Dr. Grecco for a cervical and lumbar disc diagnosis, Dr. Barthovitch for cyst drainage, Dr. Dayton for epidurals, and Dr. Barnes for a colonscopy, as well as giving her a referral for physical therapy. (R. 261,273, 282, 400).  Dr. Reilly has received reports and test results from Drs. Zant, Barnes and

Dayton and incorporated that information in his treatment.  (Tr. 212, 330, 333).

Of especial concern is the most recent Physical and Mental Assessment dated March 4, 2009 (submitted before the issuance of the March 26, 2009 decision).  The physical assessment included several grave findings which were not discussed or distinguished by the ALJ.  Specifically, Dr. Reilly found that Ms. Pusey "is on several medications which can impair balance coordination and concentration," which caused him to eliminate any postural activity – "climb, balance, crouch, kneel, or crawl" (R. 393), that she suffers from "frequent falls due to poor balance which "has become more frequent in the past several years," (R. 394) and that she would need to rest or lay down "30 minutes several times in a day."  Id.  Similarly, in the Mental Assessment ("Mental"), Dr. Reilly states that "her depression has been incompletely controlled with medication."  (R. 390).[3] Accordingly, and in light of the above, the Court believes a remand with a more complete explanation of the minimal weight given to the treater is required.

Also, the Court rejects the ALJ's reasoning that Dr. Reilly's opinion should be given less weight because Dr. Reilly is only a primary care physician.  The Court has found no

_____

[3] The psychiatric consultant's diagnosis of "major depression, recurrent" (R. 247), which was rejected, is, of course, consistent with and supportive of the treater's opinion as to the disabling effect of her mental and physical conditions.

17

precedent that a general physician's opinion, without more, should be accorded little weight because he lacks a specialty in a given field. While specialist status might invest Dr. Reilly's opinions with greater gravitas, primary care doctors routinely manage the kinds of complaints and conditions Ms. Pusey has, especially in conjunction with specialists, as was the case here. He received the reports of specialists and they certainly informed his opinion and testimony. Moreover, the ALJ observed that Dr. Reilly's lack of expertise in vocational training and occupational health impairs his ability to provide a "balanced review of claimant's limitations." (R. 27). As claimant points out, it does not appear that the physicians upon whose opinions the ALJ relies have this expertise either.

Finally, the ALJ is correct that the ultimate opinion as to whether a claimant is disabled is reserved for the Commissioner. 20 CFR § 404.1527(e)(1)) ("We are responsible for making the determination or decision about whether you meet the statutory definition of disability. A statement by a medical source that you are "disabled" or "unable to work" does not mean that we will determine that you are disabled.)". However, the regulations envision that the ALJ will take into account all of the medical evidence and opinions of a claimant's physicians. SSR 96-5p. The ALJ is precluded from giving controlling weight to the treating physician opinion; however, the ALJ should

consider the factors enumerated in 20 CFR § 404.1527(d) in coming to a decision. Id. Here, the ALJ did not cite to any facts that would limit the weight given to Dr. Reilly's opinion under 20 CFR § 404.1527(d).

For the above reasons, the ALJ should re-evaluate Dr. Reilly's opinion, taking into account specifically the factors listed in 20 CFR § 404.1527(d). If the ALJ determines that Dr. Reilly's opinion should be given little weight, the ALJ should articulate her reasons with sufficient specificity to enable assessment by the reviewing court, as required by SSR 96-2p.

## B. Pain and credibility

Ms. Pusey also contends that the ALJ improperly evaluated her pain. From the medical records as well as from Ms. Pusey's testimony, there are many indicia that Ms. Pusey's pain might limit her capabilities. The ALJ, however, found that Ms. Pusey's pain would not limit her RFC because Ms. Pusey's testimony was not credible. Because the ALJ's finding of the lack of credibility of Ms. Pusey's testimony lacks sufficient factual reasoning, the Court remands this issue to the ALJ to support her conclusions with references to the evidence.

Under the regulations, whether a claimant is disabled by pain is a two-step process. Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996). "The threshold requirement is that there must be 'objective medical evidence showing the existence of a

medical impairment which could reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant.'" Gavigan v. Barnhart, 261 F. Supp. 2d 334, 338-339 (D. Md. 2003) (quoting Craig, 76 F.3d at 594). "Once the ALJ concludes that a claimant has a medical impairment that can reasonably be expected to produce the pain claimed, the ALJ must then evaluate the intensity and persistence of that pain and the extent to which it limits claimant's ability to work." Gavigan, 261 F. Supp. 2d at 338-339; See 20 C.F.R. § 416.929(c). Factors to be considered at step two include: (1) claimant's statements about pain; (2) claimant's medical history; (3) laboratory findings; (4) any objective medical evidence of pain; (5) claimant's daily activities; and (6) medical treatment to alleviate pain. Craig, 76 F.3d at 595; 20 C.F.R. § 416.929(c).

"Whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." SSR 96-7p. In determining the credibility of an individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements provided by treating or examining physicians, and any other

relevant evidence in the case record.  Id.  An individual's statements about the intensity and persistence of pain may not be disregarded solely because they are not substantiated by objective medical evidence.  Id.  A claimant is not required to show objective medical evidence of the pain itself.  Foster v. Heckler, 780 F.2d 1125, 1129 (4th Cir. 1986); See 20 C.F.R. § 416.929(c)(2).

The ALJ's credibility determination cannot be based on an intangible or intuitive notion about the individual's credibility.  Id.  "The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision."  Id.  It is not sufficient to make a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible."  Id.  The ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight."  Id.  Here, the ALJ found that Ms. Pusey satisfied the first part of the test, i.e., that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms."  (R. 25).

As to step two of the analysis, the ALJ merely stated that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (R. 25). The ALJ does not explain or support this conclusion with any facts; instead, she merely concludes that Ms. Pusey's statements are not credible because they are inconsistent with the RFC determination. The ALJ's analysis is circular: the only reason Ms. Pusey did not have a lower functional capacity was because her pain testimony was deemed not credible. If the ALJ found Ms. Pusey's testimony to be credible, then her RFC would have been at a lower functional capacity. The ALJ does not identify the medical or other evidence in the record which undermines the intensity, persistence and limiting effects of her pain and other symptoms about which Ms. Pusey complains.

The Court remands this issue for the ALJ to determine the credibility of Ms. Pusey's statements regarding her pain. The ALJ's findings should include specific references to the record using the factors discussed in Social Security Ruling 96-7p.

## VI. Conclusion

Having found the ALJ's conclusions regarding the weight to be afforded Dr. Reilly's opinion and the credibility of Ms. Pusey's testimony on pain to be lacking in required analysis,

explanation and citation to the record, the Court hereby REMANDS

for action consistent with this opinion.


Date: 2/14/11_____          _____/s/_____
                               Susan K. Gauvey
                               United States Magistrate Judge